UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 06-60742-CIV-COHN

YALE GALANTER, P.A. and YALE GALANTER,

Magistrate Judge Snow

       Plaintiffs,

vs.

CHARLES E. JOHNSON, JR., NATIONAL UNION
FIRE INSURANCE CO. OF PITTSBURGH PA, INC.,
AMERICAN INTERNATIONAL GROUP, INC.,
NORTH AMERICAN SPECIALTY INSURANCE CO.,
and LLOYD'S (A SYNDICATE OF UNDERWRITING
MEMBERS)

       Defendants.

_____/

## ORDER GRANTING CERTAIN DEFENDANTS' MOTIONS TO DISMISS

_____THIS CAUSE is before the Court upon Defendant National Union's Motion to Dismiss and Motion to Strike [DE 37], Defendant Lloyd's' Motion to Dismiss and Motion to Strike [DE 51] and Defendant North American's Motion to Dismiss and Motion to Strike [DE 38].  The Court has carefully considered the motions, response, and replies thereto, and is otherwise fully advised in the premises.  The last of these motions became ripe on June 1, 2007, while mediation ended in an impasse on June 27, 2007.

### I.  BACKGROUND

On May 2, 2006, Attorney Yale Galanter and his professional association ("Plaintiffs") filed this action for breach of contract, unjust enrichment, open account, tortious interference with business relationship, defamation and libel, against Charles E. Johnson, Jr. ("Johnson"), as a result of unpaid legal fees allegedly owed by Defendant to Plaintiffs in the amount of $769,321.65, plus interest.   On December 15,

2006, Plaintiffs filed their First Amended Complaint, adding as defendants four insurance companies that provided Directors and Officers (D&O) policies to Johnson's employer, Purchasepro.com, Inc.  Diversity jurisdiction exists as Johnson and the Insurance Defendants are citizens of states other than Florida, and the damages alleged exceed $75,000.  The claims now alleged are breach of contract against the four insurance companies (Count I), breach of contract against Johnson (Count II), bad faith against the insurance companies (Count III), and unjust enrichment against all Defendants (Count IV).  Three of the insurance companies, National Union (provider of the primary insurance policy), Lloyd's (provider of the third layer of insurance), and North American Specialty (provider of the fourth layer), all have separately moved to dismiss the complaint for failure to state a claim (hereinafter, "Insurance Defendants").[1]

Plaintiffs provided legal services to Johnson in a federal criminal investigation from January 6, 2005 through January of 2006, pursuant to a purported "Letter of Engagement" dated December 22, 2004 from National Union's counsel to Plaintiffs. Plaintiffs were paid pursuant to the various D&O policies at issue in this case for services rendered by Plaintiffs through October of 2005.  Am. Compl. ¶¶ 46, 50, 52, 54.[2]  In January of 2006, a dispute arose between Attorney Galanter and Johnson, whereby Plaintiffs allege Johnson attempted to extort some of Plaintiffs' previous receipts of paid legal fees.  Id., ¶¶ 49-50.  Plaintiffs allege that once Plaintiff Galanter

---

[1]  The Insurance Defendants have also moved to strike the claim for attorney's fees.  Plaintiffs do not oppose this part of the motion.

[2]  Plaintiffs' allegations do not differentiate between the various Insurance Defendants as to who was paying him.  Plaintiffs do allege that "upon information and belief," Defendant Lloyd's was providing payments of claims under their policy.  Am. Compl. ¶ 55.

notified the Insurance Defendants of Johnson's attempted acts of extortion against

Plaintiffs, Defendants refused to pay Plaintiffs' final bill.  Id., ¶¶ 53-54, 57-58.  Plaintiffs

withdrew from the representation of Johnson in January, 2006, and submitted a final bill

for services for the period from November 2005 through January 2006.  Id., ¶¶ 52, 54.

A trial in the criminal matter took place in December 2005, during which time Plaintiffs

worked hundreds of hours, resulting in a final bill of $769,321.65.  Id., ¶¶ 36-37, 57.

## II.  DISCUSSION

Until the recent Supreme Court decision in Bell Atlantic Corp. v. Twombly, 550

U.S. —, 127 S.Ct. 1955 (2007), courts routinely followed the rule that, "a complaint

should not be dismissed for failure to state a claim unless it appears beyond a doubt

that the plaintiff could prove no set of facts in support of his claim which would entitle

him to relief."  Conley v. Gibson, 355 U.S. 41, 45-46 (1957); Marsh v. Butler County,

268 F.3d 1014, 1022 (11th Cir. 2001).  However, pursuant to Twombly, to survive a

motion to dismiss, a complaint must now contain factual allegations which are "enough

to raise a right to relief above the speculative level, on the assumption that all the

allegations in the complaint are true."  127 S. Ct. at 1965.   "While a complaint attacked

by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a

plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more

than labels and conclusions, and a formulaic recitation of the elements of a cause of

action will not do."  Id. at 1964-65.  Taking the facts as true, a court may grant a motion

to dismiss when, "on the basis of a dispositive issue of law, no construction of the

factual allegations will support the cause of action."  Marshall Cty. Bd. of Educ. v.

Marshall Cty. Gas Dist., 992 F.2d 1171, 1174 (11th Cir. 1993).   Defendants argue in

this case that Plaintiffs fail to state a claim and lack standing under the insurance contract to sue for breach, bad faith, and attorney's fees.[3]

## A.  Contract Recovery

Defendants rely upon the decision in <u>Continental Casualty Co. v. Marx</u>, 480 So.2d 177, 178-79 (Fla. Dist. Ct. App. 1985), wherein the Third District Court of Appeal soundly rejected the attorney's theory of collection on a similar D&O policy.  The court held that the attorney was not a third party beneficiary of the insurance contract and that no court has ever held that a "lawyer may himself sue upon an insurance policy or any other agreement which obliges one contracting party to pay the other's legal fees." <u>Marx</u>, 480 So.2d at 178-79.  There is no Florida law to the contrary.  Rather, the person receiving the fees has standing to sue his insurance company for payment of such fees.

Plaintiffs make an effort to distinguish <u>Marx</u> because of the presence of Exhibit A to the Amended Complaint, the letter from National Union approving Attorney Galanter to represent Johnson under the D&O policy at issue.[4]  Such a letter appears to qualify Galanter to represent Johnson under the D&O policy and National Union did in fact pay Galanter under the policy.  No such letter was discussed by the court in <u>Marx</u>.  In addition, in Marx the attorney had settled the fee dispute with the insured, while in the present case, the dispute is ongoing.

---

[3]  Plaintiffs have conceded the issue of a right to attorney's fees pursuant to Fla. Stat. § 627.428.  Plaintiffs' Memorandum at n. 1 [DE 52].

[4]  The Court may consider documents referred to by a plaintiff in a complaint which are central to the plaintiff's claim for purposes of a motion to dismiss without conversion of the motion to dismiss into a motion for summary judgment.  <u>Brooks v. Blue Cross & Blue Shield of Fla.</u>, 116 F.3d 1364, 1369 (11th Cir. 1997) (opinion of then United States District Court Judge Stanley Marcus attached to Eleventh Circuit opinion); <u>Smith Barney, Inc. v. Scanlon</u>, 180 F.R.D. 444, 446 (S.D.Fla. 1998).

Defendants assert that in <u>Old Republic Ins. Co. v. Sidley & Austin</u>, 702 F.Supp. 207, 210-11 (N.D.Ill. 1988), the Court followed <u>Marx's</u> holding despite the existence of an agreement between Old Republic and Sidley & Austin.  The court held that "the agreement merely codified the preexisting obligation to pay attorneys' fees articulated in the original policies.  702 F.Supp. at 212.  The Court noted, however, that it is not clear what was in the agreement between the insurance company and Sidley & Austin.  As Plaintiffs argue, the December 22, 2004 letter from National Union to Yale Galanter specifically allows Plaintiffs to serve as counsel under the policies, thereby arguably creating third-party beneficiary status for Plaintiffs.  While the Court will follow <u>Marx</u> as Florida law, it need not follow <u>Sidley & Austin</u>, as that case was decided under Illinois law.

Applying this case law to the present dispute, the Court makes a distinction between Defendant National Union, as the author (via its own counsel) of the letter that approved Yale Galanter as counsel to Johnson, as opposed to the other Insurance Defendants that were not a party to the letter.  As to National Union, while Plaintiffs are not specifically third-party beneficiaries under the original policies, the letter sent by National Union appears to be an independent agreement to bestow some formal status, whether as a third-party beneficiary under the insurance policy, or as a first party to the agreement.  The Court will therefore deny National Union's motion to dismiss as <u>Marx</u> is distinguishable due to existence of a specific engagement letter.[5]

However, with respect to Defendants Lloyd's and North American, these

---

[5]  This conclusion is reached in the context of the motion to dismiss standard, and is without prejudice to later consideration at the summary judgment stage of the litigation.

companies were not part of the letter sent by National Union.  Plaintiffs do allege upon

"information and belief," that Defendant Lloyd's "provid[ed] payments of claims under the

excess coverage agreement incorporated into the subject insurance policy."  Am.

Compl. ¶ 55.   Plaintiffs argue that a course of dealing of payments of funds by Lloyd's

creates a right of Plaintiffs to continue receiving such funds as a first party to the

insurance contract or the subsequent National Union Engagement Letter.  Even if the

"information and belief" allegation of payment is sufficient, while a course of dealing can

resolve ambiguities in a contract, Boman v. State Farm Mut. Auto. Ins. Co., 505 So.2d

445, 449 (Fla.Dist.Ct.App. 1987), it cannot make someone into a party to a contract, or

even to create third-party beneficiary status under the insurance contract.   It is clear

that when the insurance contract was made by Purchasepro.com, no intention existed to

benefit these particular Plaintiffs, and no subsequent agreement was reached between

Plaintiffs and the other Insurance Defendants.[6]  Plaintiffs argue that the decision in

Cresci v. The Yacht Billfisher, 874 So.2d 1550 (11th Cir. 1989), supports their contention

that one can sue an insurance company as a non-insured before obtaining judgment

against an insured.  However, that decision to reverse the granting of a motion to

dismiss was based upon the fact that the plaintiff, a salvage company, sued on an

independent cause of action of maritime salvage, and not upon the insurance policy.

    As the Florida District Court of Appeal stated in Marx, there is no precedent to

---

[6]  Plaintiffs allege in the Amended Complaint that the Insurance Defendants jointly hired a legal auditing firm to audit Plaintiffs' bills.  Am Compl. ¶ 83.  Accepting this as true regarding a joint decision to breach the contract, there are insufficient allegations that the Engagement Letter of December 22, 2004 was entered into by National Union on behalf of the other Insurance Defendants.  Simply alleging some vague theory of "agency" in a Complaint of one insurance company for three other independent companies cannot survive a motion to dismiss.

allow an attorney to sue for breach of contract for failure to pay fees pursuant to a D&O insurance policy.  Sitting as a federal court, this Court is bound to follow Florida law in this diversity action.  Absent a separate agreement that benefits one particular attorney or law firm, the attorney lacks standing as a party to sue for breach of the insurance contract.

## B.  Bad Faith

The Insurance Defendants also assert that the claim for bad faith should be dismissed for lack of standing and failure to give the statutory written notice.  Plaintiffs argue that the claim is not under the statutory scheme, but rather for common law bad faith.  Under the statutory scheme, Florida Statutes Section 624.155 requires 60 days written notice before filing of a statutory bad faith claim.  No notice was given in this case.  As such, Plaintiffs can only proceed on a common law theory of bad faith.

Plaintiffs acknowledge that under Florida law, coverage and liability issues must be determined before the third party can proceed with the prosecution of a bad faith action.  Id. (citing Gen. Star Indem. Co. v. Anheuser-Susch Cos., Inc., 741 So. 2d 1259, 1261 (Fla. 5th DCA 1999)).   Plaintiffs assert that the policy reason for this abatement, unfair harm to the insurance company in discovery of its internal accident file, is not an issue in this situation.  However, under Florida law, a third party normally must obtain a judgment and assignment from the insured to bring a bad faith claim against the insurer.

As to Defendants Lloyd's and North American, the conclusion that Plaintiffs are not a first or third party to the insurance contract precludes the maintenance of a bad faith claim, since coverage would still need to be proven, whether or not abated at this time.  As to Defendant National Union, it argues that while Plaintiffs have attempted to

distinguish the policy reasons for abatement in most cases, there remains no legal support for Plaintiffs' position that it should simultaneously be able to maintain breach of contract and bad faith claims.

### C.  Unjust Enrichment

"The elements of a cause of action for unjust enrichment are: (1) plaintiff has conferred benefit on the defendant, who has knowledge thereof; (2) defendant voluntarily accepts and retains the benefit conferred; and (3) the circumstances are such that it would be inequitable for the defendant to retain the benefit without paying for the value thereof to the plaintiff."  Peoples National Bank of Commerce v. First Union National Bank of Florida, N.A., 667 So.2d 876, 879 (Fla. 3rd DCA 1996).   Defendants allege that they did not receive a direct benefit, rather, the benefit was conferred upon Defendant Johnson.  Id. In addition, the Marx decision reversed an award under a quantum meruit theory, stating that "there is utterly no cognizable legal basis upon which Marx's recovery . . . can be sustained."  480 So.2d 177, 178.

This Court agrees with Defendants that unjust enrichment cannot substitute as a theory for an attorney claiming attorney's fees pursuant to a D&O policy.  The Court will therefore dismiss Count IV as to the Insurance Defendants.

### III.  CONCLUSION

The Court dismisses Counts I and III as to Defendants Lloyd's and North American, and Count IV as to all Insurance Defendants.  Defendants Lloyd's and North American are therefore dismissed from this action.

Accordingly, it is **ORDERED AND ADJUDGED** as follows:

1.   Defendant National Union's Motion to Dismiss [DE 37] is hereby **GRANTED in**

**part** as to Count IV, and **DENIED** as to Counts I and III;

2.    Plaintiffs' claim in Count III against National Union is hereby **STAYED**, pending resolution of Counts I and II.  National Union shall file an Answer to Count I by July 31, 2007.

3.    Defendant National Union's Motion to Strike claim for attorney's fees is hereby **GRANTED**;

4.    Defendant Lloyd's' Motion to Dismiss and Motion to Strike [DE 51] and Defendant North American's Motion to Dismiss and Motion to Strike [DE 38] are hereby **GRANTED**;

5.    Defendants Lloyd's and North American are hereby **DISMISSED** from this action.

    **DONE AND ORDERED** in Chambers at Fort Lauderdale, Broward County, Florida, this 16th day of July, 2007.

JAMES I. COHN
United States District Judge

copies to:

Ileen J. Cantor, Esq.
Charles E. Johnson, Jr., pro se
Mark Shaprio, Esq./Gary Guzzi, Esq.
Steven J. Brodie, Esq.
Mark D. Greenberg, Esq.
Richard E. Douglas, Esq.
Susan K. Sullivan, Esq.